## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| ANGELICA TAFUR, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| THE CAMPBELL DENTAL GROUP, LLC, DR. MONICA CAMPBELL, and DR. WENDELL CAMPBELL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Angelica Tafur ("Plaintiff") files this Complaint against Defendants The Campbell Dental Group, LLC, Dr. Monica Campbell, and Dr. Wendell Campbell (collectively "Defendants"). Plaintiff brings claims against all Defendants for discriminatory termination and retaliatory termination in violation of 42 U.S.C. § 1981 ("Section 1981"). Plaintiff shows the Court as follows:

## INTRODUCTION

1.     Plaintiff alleges discrimination on the basis of race and retaliation. Plaintiff is Hispanic and was the only non-African-American employee working for Defendants for the vast majority of her employment. On or about October 15, 2021,

Plaintiff complained to Defendants that she was being subjected to discriminatory treatment by Defendants' employees and further informed Defendants that she would be reporting, and later informed Defendants that she had reported, the discriminatory treatment to the Equal Employment Opportunity Commission.  Then, on or about November 1, 2021, Defendants terminated Plaintiff's employment.  Defendants' alleged reason for terminating Plaintiff's employment was because it was Defendants' understanding that Plaintiff no longer wanted to work for Defendants following her complaints of discrimination.  Defendants discriminated against Plaintiff by terminating her employment because of her race and retaliated against Plaintiff following her protected activity of complaining about the discrimination.

2.     Plaintiff asserts claims against Defendants for discrimination on the basis of race and retaliatory termination on the basis of race, both in violation of Section 1981.

3.     Plaintiff seeks all available relief under Section 1981, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     This court has federal-question jurisdiction over Plaintiff's Section 1981 claims, pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     Pursuant to 28 U.S.C. § 1391(b), and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

6.     Plaintiff is a resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

7.     Plaintiff was employed by Defendants from on or about August 18, 2021, until November 1, 2021.  Plaintiff worked as a Treatment Coordinator, and as an Orthodontic and Dental Assistant as needed.

8.     Defendant The Campbell Dental Group, LLC is a Georgia corporation with its principal place of business in Atlanta, Georgia.

9.     Defendant The Campbell Dental Group, LLC is subject to the Court's jurisdiction and may be served with process through its Registered Agent, Wendell Campbell at 457 Moreland Avenue, #5478, Atlanta, Georgia 30207.

10.    Defendant The Campbell Dental Group, LLC does business in the Northern District of Georgia, where the events giving rise to this Complaint occurred.

11.    Upon information and belief, Defendant Dr. Monica Campbell is a Georgia resident and may be served with process at her residence and/or business address.

12.    Upon information and belief, Defendant Dr. Wendell Campbell is a Georgia resident and may be served with process at his residence and/or business address.

## STATEMENT OF FACTS

13.    Defendant The Campbell Dental Group is a dental office offering "personalized dental care," including cosmetics, implants, and orthodontics to residents of the surrounding communities.

14.    Defendants employed Plaintiff as a Treatment Coordinator, and as a Dental and Orthodontic Assistant as needed, from on or about August 18, 2021, until Defendants terminated her employment on November 1, 2021.

15.    Plaintiff had an employment contract with Defendants within the meaning of 42 U.S.C. § 1981 under which, *inter alia*, Plaintiff performed work for Defendants, and Defendants compensated Plaintiff for work.

4

16.     Plaintiff fully performed under the contract.

17.     As a Treatment Coordinator, Plaintiff's primary job duties included, among many other things, working with Defendants' patients, collecting payments from patients, presenting treatment plans, and overseeing and discussing written financial agreements with patients.

18.     As a Dental Assistant, Plaintiff's duties primarily included delivering and seating dental restorations, adjusting and delivering partials and dentures, and making temporaries, such as crowns and bridges.  Plaintiff also assisted during orthodontic treatments.

19.     Plaintiff is a Hispanic female.

20.     On information and belief, Defendant, The Campbell Dental Group, LLC, is jointly owned and managed by Defendant Dr. Monica Campbell and Defendant Dr. Wendell Campbell.

21.     Dr. Monica Campbell is African-American.

22.     Dr. Wendell Campbell is African-American.

23.     For a vast majority of Plaintiff's employment with Defendants, she was the only non-African-American employee.

24.     Plaintiff often experienced discriminatory treatment from Defendants' African-American employees.

25.    On several occasions, Plaintiff orally complained to Dr. Monica Campbell about the discriminatory treatment, including complaining that she was being "disrespected" by Defendants' African-American employees.

26.    On or about September 24, 2021, Plaintiff sent a text message to Dr. Monica Campbell (1) complaining that Kreshawna Fields, Defendants' Dental Assistant, was regularly "disrespecting" Plaintiff and (2) resigning from her employment due to the treatment.

27.    Ms. Fields is African-American.

28.    Prior to September 24, 2021, there were at least two occasions in which Ms. Fields expressed hostility towards Plaintiff.

29.    The hostility that Ms. Fields expressed towards Plaintiff included, screaming and yelling while approaching Plaintiff, standing uncomfortably close to Plaintiff's body, and standing over Plaintiff as she sat in a chair.

30.    Ms. Fields was so close to Plaintiff while screaming and yelling, that Plaintiff was fearful that Ms. Fields was going to physically injure her.

31.    Mr. Wendell Campbell was present at the office during the incidents of hostility but did not intervene and did not stop Ms. Fields from treating Plaintiff in this hostile manner.

32.    When Plaintiff sent the resignation text message to Dr. Monica Campbell, Dr. Monica Campbell immediately left the class she was attending that day to tend to the situation.  When Dr. Monica Campbell arrived at the office, she asked Plaintiff to give Ms. Fields "a chance."  Thereafter, Plaintiff decided to remain employed with Defendants.

33.    On or about September 29, 2021, Plaintiff met with Dr. Monica Campbell and Ms. Fields.  The purpose of the meeting was to discuss Plaintiff's complaints.

34.    During the meeting, Ms. Fields told Plaintiff, among many things, that she (1) did not like Plaintiff, (2) did not like the way Plaintiff spoke, and (3) did not like the way Plaintiff presented herself.

35.     Dr. Monica Campbell, who was present for the entirety of the meeting, did not intervene and did not stop Ms. Fields from making these discriminatory and insulting comments.  Dr. Monica Campbell instead told Plaintiff that Ms. Fields needed to "let it out."

36.    On or about October 15, 2021, Plaintiff attempted to collect payment from a patient following a teeth whitening treatment.

37.    The patient was African-American.

7

38.     While Plaintiff was collecting the payment, Geraldine Simmons, Defendants' Patient Coordinator, interjected and demanded that Plaintiff allow the patient to pay at a later time.

39.     Ms. Simmons is African-American.

40.     Dr. Monica Campbell was not in the office at the time of the incident but had previously instructed Plaintiff to collect all payments following patient treatments.

41.     Therefore, the patient paid for the teeth whitening treatment and left the office.

42.      Shortly thereafter, the patient called Defendants' office and complained about Plaintiff requiring payment for treatment.  The complaint was made to Ms. Simmons.

43.     Following the complaint, Plaintiff informed Ms. Simmons that she was displeased with the fact that Ms. Simmons put them into the positions of "good cop, bad cop" when it came to dealing with patient issues.

44.     In response, Ms. Simmons rose her voice at Plaintiff and stated, (1) "I say what I want;" (2) "you don't tell me what to do;" and (3) that Dr. Monica Campbell was Plaintiff's "master," and that Plaintiff was her "dog."  Ms. Simmons further referred to Plaintiff as a "street dog."

45.    Plaintiff understood Ms. Simmons's comments to be racially discriminatory.

46.    Plaintiff was offended by the discriminatory comments and immediately left the office.

47.    Dr. Wendell Campbell was present at the office at the time and did not intervene.

48.    Later that evening, on or about October 15, 2021, Plaintiff sent an email to Dr. Monica Campbell complaining of race discrimination.

49.    In that email, Plaintiff complained that (1) Ms. Simmons referred to her as a "dog;" (2) Defendants' employees did not see her as "one of them;" (3) she did not feel welcome in the practice; (4) "if [she were] a black woman like everyone else" [she] wouldn't have experienced so many issues; (5) she felt "re[j]ected and not accepted" and that she was experiencing "pure racism;" and (6) "because [she was] not African-American [she] was not welcome in [the] practice."

50.    Additionally, Plaintiff complained that Defendants' patients, who are primarily African-American, often treated her different than they did Defendants' African-American employees.

51.     Plaintiff concluded the complaint by informing Dr. Monica Campbell that she would be reporting the discriminatory treatment to the Department of Labor and the Equal Employment Opportunity Commission ("EEOC").

52.     Dr. Monica Campbell did not respond to Plaintiff's email.

53.     Plaintiff's complaint of race discrimination to Dr. Monica Campbell constituted protected activity under Section 1981.

54.     Later that same day, Plaintiff sent a text message to Dr. Wendell Campbell informing him that she submitted a complaint to the EEOC.

55.     Dr. Wendell Campbell did not respond to Plaintiff's text message.

56.     Plaintiff's statement that she submitted a complaint to the EEOC constituted protected activity under Section 1981.

57.     Furthermore, as additional examples of the discrimination that Defendants subjected Plaintiff to, (1) Defendants' employees often excluded Plaintiff from lunch gatherings, while new employees who were African-American were automatically accepted and invited to such gatherings; and (2) on one occasion, when Defendants displayed a board in the office of its employees' baby pictures, Defendants' employees told Plaintiff, "we already know you're the different one here," or similar words.

10

58.     On or about October 16, 2021, Plaintiff sent a text message to both Dr. Monica Campbell and Dr. Wendell Campbell following up on her complaint of race discrimination.  Plaintiff further inquired as to whether it was safe for her to return to work that day considering the prior day's incidents.

59.     Dr. Wendell Campbell informed Plaintiff that it was safe for her to report to work and that she could work in the consult room, separate from Defendants' other employees.

60.     Shortly thereafter, due to the immense stress and anxiety that Plaintiff was experiencing from the ongoing discriminatory treatment, Plaintiff suffered a panic attack and was unable to report to work.

61.     Dr. Monica Campbell instructed Plaintiff to remain home and assured her that they would discuss her concerns on October 19, 2021.

62.     Then, on or about October 19, 2021, prior to Plaintiff's arrival to work, she received a text message from Dr. Monica Campbell informing her that Defendants were placing her on paid leave while her concerns were allegedly being reviewed.  Dr. Monica Campbell told Plaintiff that she could return to the office once the review was complete.

63.     On or about November 1, 2021, Plaintiff met with Dr. Monica Campbell, at which time, Defendants terminated Plaintiff's employment.

11

Defendants claimed that Plaintiff's employment was being terminated because it was Defendants' understanding, after reading Plaintiff's complaint of race discrimination, that Plaintiff no longer wanted to work for Defendants.

64.    Plaintiff's complaint of race discrimination was never addressed.

65.    Defendants retaliated against Plaintiff and terminated her employment because she engaged in the protected activity of opposing race discrimination.

66.    Defendants terminated Plaintiff because of her race and/or because she opposed racial discrimination.

67.    Defendants' actions in subjecting Plaintiff to racial discrimination and terminating her employment in retaliation for her protected activity of opposing racial discrimination were willful, wanton and in reckless disregard for Plaintiff's rights under Section 1981.

68.    Due to Defendants' violations of federal law, Plaintiff has suffered lost wages and benefits, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

69.    Defendants acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

**COUNT I**
**Discriminatory Termination on the Basis of Race in Violation of Section 1981**

70.     Plaintiff is Hispanic.

71.     Plaintiff had an employment contract with Defendants within the meaning of Section 1981 under which, *inter alia*, Plaintiff performed work for Defendants, and Defendants compensated Plaintiff for work.

72.     Plaintiff fully performed under the contract.

73.     Plaintiff was the only non-African-American employee working for Defendants for the vast majority of her employment.

74.     Defendants discriminated against Plaintiff on the basis of her race when Defendants subjected her to discriminatory comments and treatment by and through its employees.

75.     Defendants violated Section 1981 by terminating Plaintiff's employment because of her race.

76.     Defendants' actions in subjecting Plaintiff to racial discrimination were willful, wanton, and in reckless disregard to Plaintiff's rights under Section 1981.

77.     Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

78.     As a consequence of Defendants' violations of Section 1981, Plaintiff has incurred lost wages, and has experienced emotional distress, physical distress, embarrassment, and loss of enjoyment of life.

79.     Plaintiff is entitled to declaratory relief, lost wages, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT II
## Retaliatory Termination in Violation of Section 1981

80.     Plaintiff had an employment contract with Defendants within the meaning of Section 1981 under which, *inter alia*, Plaintiff performed work for Defendants, and Defendants compensated Plaintiff for work.

81.     Plaintiff fully performed under the contract.

82.     Plaintiff engaged in protected activity under Section 1981 when she complained to Defendants that she was being subjected to discrimination, including that she would be reporting, and later did report, the racially discriminatory treatment to the Equal Employment Opportunity Commission.

83.     Defendants violated Section 1981 by terminating Plaintiff's employment in retaliation for her protected activity of opposing racial discrimination.

14

84.     As a consequence of the retaliation that she experienced from Defendants, Plaintiff has incurred lost wages, and has experienced emotional distress, physical distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

85.     Defendants' retaliation against Plaintiff for engaging in the protected activity of opposing the race discrimination was willful, wanton, and in reckless disregard for Plaintiff's rights under Section 1981.

86.     Defendants acted with malice or with reckless indifference to Plaintiff's Section 1981 rights.

87.     Plaintiff seeks all available relief under Section 1981, including compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)     A declaratory judgement that the practices of Defendants complained of herein are unlawful under Section 1981;

b)     Full lost wages and benefits;

c)     Compensatory damages in an amount to be determined by the jury;

15

d)     Punitive damages in an amount to be determined by the jury;

e)     Attorneys' fees and costs;

f)     An award of prejudgment and post-judgment interest; and

g)     All other equitable and other further relief as this court deems just and proper.

Respectfully submitted this 12th day of May 2022.

/s/ Justin M. Scott
Justin M. Scott
Georgia Bar No. 557463
Michael David Forrest
Georgia Bar No. 974300
Scott Employment Law, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

Counsel for Plaintiff